COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
NO. 2-01-463-CR
 
MICHAEL ESTRADA   
                                                        
APPELLANT
V.
THE STATE OF TEXAS   
                                                        
STATE
------------
FROM COUNTY CRIMINAL COURT NO. 1 OF DENTON COUNTY
------------
MEMORANDUM OPINION(1)
------------
       
Appellant Michael Estrada appeals his conviction by jury for assault-family
violence. By his first and third issues, Appellant complains that the evidence
is legally and factually insufficient to support the verdict. In his second and
fourth issues, Appellant challenges the legal and factual sufficiency of the
evidence with respect to his claim of self-defense, contending that he
established self defense as a matter of law or that the jury's rejection of that
defense was against the overwhelming weight of the evidence. We affirm.
BACKGROUND
        Michael
Estrada ("Appellant") and his mother argued about the clothing
Appellant was wearing as he was leaving their house. Appellant was wearing two
or three necklaces; several big rings; four or five bracelets, including one
with spikes; two chains around his belt; a bright red fur hat; and a long trench
coat. Appellant's mother did not approve of his clothing because she thought he
looked like a "freak," so she told him that he was "not leaving
the house looking like that." Appellant replied, "Yes, I am," and
said, "I am going to wear what I like," as he turned and started
toward the front door.
       
Appellant was seventeen years old, 6 feet 3 inches tall, and weighed
approximately 165 pounds. His mother was sixty-three years old and 5 feet 9
inches tall. Appellant's mother grabbed one of the necklaces, with the intention
of removing it from his neck. The jewelry did not break, and Appellant bit his
mother. Appellant then left the house, and his mother called 911 and reported
the assault. When the police arrived, she signed a statement saying that
Appellant pushed her and bit her hand and arm when she tried to remove the chain
from his neck. Several photographs were taken of injuries on the mother's arm
and hand.
       
Appellant was charged with assault-family violence. Before trial, Appellant's
mother unsuccessfully attempted to have the State drop the charges against her
son because she was afraid it might hurt his chances to get into the Marines.
The matter proceeded to trial after Appellant pleaded not guilty to the charge.
Appellant's mother testified at trial, stating that another reason she did not
want her son prosecuted was because she felt it was "my fault" that
her son bit her several times.
        Because
Appellant's mother did not want her son prosecuted, the facts of the incident
were heavily disputed at trial. At one point during trial, Appellant's mother
stated, "We don't know anything that happened." However, she also
testified that when she grabbed Appellant's necklace, her hand somehow got
twisted in the chain when he turned, and she could not pull her hand out. She
stated that Appellant backed away, making the situation worse, and he told her
that she was choking him. She testified, in contrast to her written statement
taken on the date of the incident, that Appellant did not push her.
       
Appellant's mother further testified she could not remember how many times
Appellant bit her, but she admitted the bite marks hurt. When the State showed
her the photographs of her hand and arm, she claimed Appellant caused only one
of the marks visible in the picture. She did agree that the photographs were an
accurate representation of her injuries on the date of the incident. She did not
know how a bite mark could have gotten on her arm, and explained, "We think
that was his bracelet with the spikes on it." However, in her statement at
the time of the offense, she had written: "bit . . . my hands and
arms." She acknowledged she still had a scar on her little finger from her
son's bite. She also testified she thought it was "reasonable" for
Appellant to have bitten her several times.
       
Appellant testified on his own behalf, that he did not try to push his mother
but was blocking her like a football lineman to get her off of him. According to
Appellant, she grabbed his shirt as he started for the door, and during the
scuffle, he yelled at his mother to "get the f**k off of me" and
"[j]ust leave me alone." Appellant testified that when she pulled the
necklace, he could not breathe, was starting to black out, and began
experiencing tunnel vision. He stated he was "telling [his] mother and
father both, in English and Spanish" that he could not breathe, but his
words came out in gasps and, because "[he] was starting to black out, . . .
couldn't breathe and the circulation was getting cut off," he only
remembered biting her on her "pinky."
        When
asked whether he bit his mother any more, Appellant testified that it was
possible. On cross-examination, Appellant testified that the entire incident
happened in a matter of seconds, "at the most under a minute." When
asked why he did not simply push his mother away, Appellant testified that the
first thing that came to mind to was to bite her.
       
Throughout trial, Appellant maintained that he acted in self-defense. While
Appellant agreed on cross-examination that his mother was possibly trying to
discipline him when she was grabbing at his chain and that it is reasonable for
a mother to discipline her child, Appellant testified on redirect that he did
not believe it was reasonable for a mother to discipline her child by choking
off the supply of blood and air to the brain. Appellant further acknowledged,
however, that, if the long mark on his mother's arm was a bite, that action by
him was excessive.
       
Appellant's seventy-seven year-old father was the only other eye-witness to the
fight between Appellant and his mother. Appellant's father testified through an
interpreter that Appellant was not cursing, but his wife was and that she called
Appellant a "thug" as he was leaving the house. He saw her grab
Appellant's chain, which did not break, and choke him as a result. He denied
seeing Appellant push his mother, but he admitted that he did not witness the
entire incident. Appellant's father further denied that the photographs in
State's Exhibit 2 were pictures of the marks on her hand and arm on the date in
question, but also testified that he saw his son bite his mother. He thought it
was reasonable for his son to bite her.
        Colony
police officer Logan Stout responded to the dispatch. Officer Stout testified
Appellant's mother told him Appellant had bitten her and that he observed the
bite marks. Another Colony officer apprehended Appellant and brought him back to
the residence where both officers questioned Appellant. Officer Stout testified
that, based on his conversations with Appellant and Appellant's mother, he
determined "[t]hat she was attempting to get the jewelry and clothing off
of him, at which time, he lashed out at her and bit her." Consequently, the
police arrested Appellant.
        Because
of the extent of the mother's injuries, Officer Stout called for a paramedic.
Officer Oscar Rodriguez of The Colony Fire Department responded to provide
medical treatment to Appellant's mother and advised her of the risks of
infection. Officer Rodriguez testified that he knew the long mark on her arm was
a human bite mark; however, he did not treat Appellant's mother because she
refused any medical treatment.
        The
State also presented the testimony of Susan Calvert-Piel, who was chief family
violence prosecutor for Denton County. Calvert-Piel conceded that she did not
witness the incident between Appellant and his mother and that everything
Calvert-Piel knew about the case came from conversations with Appellant's mother
and her review of the offense report and statements. She testified to
conversations with Appellant's mother, in which the mother stated she wanted the
charges dropped because the Marines would not take him with this charge and it
would be best for him and the family for him to go into the military service.
Calvert-Piel said Appellant's mother never mentioned choking Appellant or that
he had bitten her in self defense.(2)
       After hearing
and viewing all of the evidence presented, a jury found Appellant guilty and
assessed a punishment of sixty days' confinement in the Denton County Jail and a
$1000 fine. In accordance with the jury's recommendation, the trial court
suspended both the jail time and the fine and placed Appellant on community
supervision for two years.
STANDARDS OF REVIEW AND ANALYSIS
       Appellant does
not challenge the jury charge, which correctly informed the jury that they
should pronounce Appellant guilty if they found beyond a reasonable doubt that
he intentionally, knowingly, or recklessly caused bodily injury to his mother by
biting her with his mouth. See Tex. Penal Code ann. § 22.01(a)(1)
(Vernon Supp. 2003). As to the issue of self-defense, the charge correctly
informed the jury that they should acquit Appellant if they found that at the
time of the biting, Appellant was under attack or attempted attack by his mother
and that he reasonably believed that biting was immediately necessary to protect
himself, or if they had a reasonable doubt as to whether he was acting in
self-defense. See id. § 9.31(a).
       The defendant
has the burden of production of some evidence to support the claim of
self-defense. Zuliani v. State, 97 S.W.3d 589, 594 (Tex. Crim. App.
2003) (citing Saxton v. State, 804 S.W.2d 910, 913 (Tex. Crim. App.
1991)). Once the defendant produces such evidence, the State has the burden of
persuasion in disproving the defense. Id. The burden of persuasion does
not require the State to produce evidence; rather, it requires only that the
State prove its case beyond a reasonable doubt. Id. When the jury finds
the defendant guilty, it implicitly finds against the defensive theory. Id.
       When reviewing
legal sufficiency of the evidence to support a verdict, we view all of the
evidence in the light most favorable to the verdict, asking whether any rational
trier of fact could have found the essential elements of the offense beyond a
reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct.
2781, 2789 (1979); Wesbrook v. State, 29 S.W.3d 103, 111 (Tex. Crim.
App. 2000). When a defendant challenges the legal sufficiency to support the
rejection of a defense, we examine all of the evidence in the light most
favorable to the verdict to determine whether any rational trier of fact could
have found the essential elements of the offense beyond a reasonable doubt and
also could have found against the appellant on the self-defense issue beyond a
reasonable doubt. Saxton, 804 S.W.2d at 914.
       The factual
sufficiency standard for a finding of guilt requires us to ask whether a neutral
review of all the evidence demonstrates that the proof of guilt is so obviously
weak as to undermine confidence in the jury's determination, or whether the
proof of guilt, although adequate if taken alone, is greatly outweighed by
contrary proof. Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim. App.
2000). A factual sufficiency challenge to a rejection of a defense requires us
to review all of the evidence in a neutral light and to ask whether the State's
evidence, if taken alone, is too weak to support the jury's rejection of the
defensive theory, and also whether the proof supporting rejection of the
defense, although adequate if taken alone, is against the great weight and
preponderance of the evidence. Zuliani, 97 S.W.3d at 594-95.
       To make a
determination of factual sufficiency, a complete examination of all the relevant
evidence is required. Johnson, 23 S.W.3d at 12. A proper factual
sufficiency review must include a discussion of the most important and relevant
evidence that supports the appellant's complaint on appeal. Sims v. State,
99 S.W.3d 600, 603 (Tex. Crim. App. 2003).
      We reject
Appellant's argument under his third point that the evidence establishes
self-defense as a matter of law. Self-defense, based upon testimony of
interested witnesses, Appellant and his family members, was a fact issue for the
jury. See Saxton, 804 S.W.2d at 913-14; Manuel v. State,
981 S.W.2d 65, 68 (Tex. App.--Fort Worth 1998), aff'd, 994 S.W.2d 658
(Tex. Crim. App. 1999). Defensive evidence that is merely consistent with the
physical evidence at the scene will not render the State's evidence insufficient
because the jury is solely responsible for determining the credibility of the
evidence and is free to accept or reject the defensive evidence. Saxton,
804 S.W.2d at 914.
       We also reject
Appellant's legal and factual insufficiency complaints. When a jury's
determination depends primarily upon its evaluation of the witnesses' demeanor
and credibility, it is entitled to almost total deference. Johnson, 23
S.W.3d at 8-9. The jury's evaluation of the credibility of Appellant and his
parents was crucial to its verdict. Their testimony was inconsistent and
conflicting on critical facts. Appellant admitted biting his mother, and the
jury could have found that their testimony as to a single bite on her finger was
contrary to the photographs and the observations of a neutral, experienced
paramedic and police officer, as well as contrary to the mother's statement
given at the scene. Additionally, the jury could have rejected the family's
version of the occurrence at trial-that the mother was choking Appellant by the
twisted necklace-as inconsistent with the versions of the incident given at the
scene and by the mother to the family violence prosecutor. Alternatively, the
jury could have believed that multiple bites in response to the situation
exceeded reasonably and immediately necessary action in self-defense.
       We have
reviewed the record extensively, and under the applicable standards of review,
giving due deference to the fact finder's determinations, we hold that the
evidence was both legally and factually sufficient to support the essential
elements of the offense and the jury's implicit rejection of Appellant's claim
of self-defense. Accordingly, we overrule Appellant's four points.
CONCLUSION
       Having overruled Appellant's four
points, we affirm the trial court's judgment.
 
                                                          
ANNE GARDNER
                                                          
JUSTICE
 
PANEL B: DAUPHINOT, GARDNER, and WALKER, JJ.
DO NOT PUBLISH
Tex. R. App. P. 47.2(b)
DELIVERED: May 29, 2003

1. See Tex. R. App. P. 47.4.
2. Calvert-Piel testified without objection that she would
dismiss or not file a case when domestic violence was committed in self-defense,
but she did not believe that defense was valid in this case as she had learned
of no evidence that Appellant was acting in self-defense. In all of the family
violence cases she had worked on, she estimated, the victim did not want the
State to prosecute ninety to ninety-five percent of the time. In almost every
domestic violence case, she said, self-defense is the "standard
defense." These conclusory opinions constituted no evidence of probative
value, and we disapprove attempts to bootstrap a prosecution by offering a
prosecuting attorney's opinion that a defendant has no evidence of a valid
defense.